UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MELISSA M. MORRISON, | ) Civil Action No.: 4:12-cv-0471-RBH-TER |
| Plaintiff, | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| McLEOD MEDICAL CENTER-DILLON; | ) |
| Defendant. | ) |

## I.     INTRODUCTION

This is an employment discrimination case. Plaintiff alleges that Defendant discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 21). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. A hearing was held on June 25, 2013. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff is an African-American female who worked on and off for several different McLeod Health entities between 2002 and 2010. Compl. ¶ 7. McLeod Health is comprised of a number of entities, including but not limited to, Defendant McLeod Medical Center-Dillon in Dillon, South Carolina (McLeod Dillon); McLeod Regional Medical Center in Florence, South Carolina (McLeod Florence); and McLeod Physician Associates Inc. (MPA). MPA is comprised of a number of private, for-profit physician practice groups in the Pee Dee area. Plaintiff worked for McLeod Florence, McLeod Dillon, and two MPA practices (Pee Dee Surgical and McLeod OBGYN-Dillon) at various

times between 2004 and 2010. Most recently, Plaintiff was employed with McLeod OBGYN-Dillon but resigned in October 2010 because she could no longer continue to work as a Licensed Practical Nurse (LPN) at McLeod OBGYN-Dillon while going to school full-time for her Registered Nurse (RN) degree. Pl. Dep. at 11. Plaintiff is currently working as an RN at Carolinas Hospital System. Pl. Dep. at 8.

While going to school in 2003 at Florence Darlington Technical College to receive her Medical Assistant Certificate, she was informed by other students that it might be beneficial for her to be working in a clinical environment so she could start learning the medical language. Pl. Dep. at 24. Thus, Plaintiff went online and filled out an application and applied for a Unit Secretary position. She interviewed with Catherine Godwin (African-American), the Director of Nursing/Renal at McLeod Florence, and was hired for the position. Pl. Dep. at 25-26. Later in 2003, she quit employment with McLeod Florence and went to work for Dr. Sitti as a Medical Assistant. Pl. Dep. at 27. Dr. Sitti is not employed by a McLeod Health entity.

Plaintiff was hired at Pee Dee Surgical as a receptionist in May 2004. Pl. Dep. at 28-29. Pee Dee Surgical is a private, for-profit practice that is part of MPA. Pl. Dep. at 28. Plaintiff worked at Pee Dee Surgical for about a year and a half and then made the decision that she wanted to go to nursing school to get her LPN degree. Pl. Dep. at 33. In order to accommodate her school schedule, Plaintiff began looking for other positions throughout the various McLeod Health entities for which she could apply. Pl. Dep. at 33. She was also looking for a different medical work environment that would enhance her medical educational experience. Pl. Dep. at 34. She applied for several positions at different McLeod Health entities including a Monitoring Tech position at McLeod Dillon. Pl. Dep. at 36-37. She interviewed with Cindy Byrd, Director of Med-Surgical, who knew that Plaintiff was going to school and could not work days. Pl. Dep. at 38. Ms. Byrd hired Plaintiff for the

Monitoring Tech position and accommodated her school schedule by allowing her to work primarily weekends and occasionally at night. Pl. Dep. at 38.

Plaintiff worked as a Monitoring Tech from February 2006 until October 2008. Pl. Dep. at 38-39; Ex. 4. During her employment as a Monitoring Tech at McLeod Dillon, Plaintiff requested a change in hours due to her heavy workload in the LPN program. Pl. Dep. at 42; Ex. 3. McLeod Dillon accommodated Plaintiff's request to cut back her work hours to accommodate her schooling. Pl. Dep. at 42.

Once Plaintiff obtained her LPN degree, she was interested in a nursing position and resigned her Monitoring Tech position on August 1, 2008. Pl. Dep. Ex. 4. Morrison went on the McLeod Health website looking for nursing jobs. Pl. Dep. at 48. Plaintiff acknowledges that the Hospital had shifted from hiring LPNs to primarily hiring RNs. Pl. Dep. at 47. Plaintiff sought employment outside McLeod Dillon and went to Pines Nursing Home to work as an LPN. Pl. Dep. at 49.

After a month or two at Pines Nursing Home, Plaintiff applied for and was hired as an LPN at McLeod OBGYN-Dillon. Pl. Dep. at 51. Private physician practice groups are more likely to hire an LPN than an RN. Private practice groups don't have the need for the skill set and scope of an RN. Pl. Dep. at 50-51. McLeod OBGYN-Dillon is a for-profit, private physician practice group that is part of MPA. It is located on the third floor of the McLeod Professional Building behind the McLeod Dillon Hospital. Pl. Dep. at 54

Plaintiff worked for approximately two years as an LPN at McLeod OBGYN–Dillon before deciding to return to school to obtain her RN degree in the summer of 2010. Pl. Dep. at 64. She moved to PRN (as needed) status in July 2010 because she began taking day classes for her RN degree. Pl. Dep. Ex. 7. McLeod OBGYN-Dillon posted an opening to back fill Plaintiff's LPN job because McLeod OBGYN-Dillon could not accommodate Plaintiff's work schedule in such a small

practice. Pl. Dep. at 65-66. Plaintiff began looking for a position that would allow her to work more than on a PRN basis and go to school full–time. Ms. Turbeville, the Office Manager, offered to call someone with MPA to see if there were any openings for Plaintiff. Pl. Dep. at 67. Plaintiff applied for a number of positions at McLeod Florence and one position at McLeod Dillon between August of 2009 and November of 2010. Positions Applied (attached as Ex. A to Plaintiff Response).[1] No positions for Nurse Externs were posted at McLeod Dillon. Pl. Dep. 76. However, she spoke informally with a few department managers at McLeod Dillon in June and July of 2010[2] about trying to find a position at McLeod Dillon. Pl. Dep. 69. One of the department managers with whom she spoke was Teresa Sapp[3], Director of Critical Care Services at McLeod Dillon.[4] Id. Plaintiff resigned her PRN position at McLeod OBGYN–Dillon in October of 2010, citing her numerous unsuccessful attempts at securing employment at McLeod Florence that would accommodate her school schedule. Pl. Dep. Ex. 10.

Subsequently, Spring Lewis, a white LPN who was attending school to receive her RN degree, was hired as an LPN/RN Staff Nurse in the Intensive Care Unit (ICU) at McLeod Dillon on December 15, 2010. Spring Lewis Job Detail p. 1 (attached as Ex. B to Pl. Response). Prior to

---

[1] Plaintiff does not allege that she was discriminated against with respect to any of the McLeod Florence positions or the one Monitor Technician position at McLeod Dillon. Pl. Dep. at 98-100.

[2] In her deposition, Plaintiff is asked "and so that would have been, like June, July of '10?" Plaintiff responds. "Yeah it would have been around about that time when I had did the applications, and, you know, was looking . . . ." Plaintiff Dep. p. 69.

[3] Sapp does not recall speaking with Plaintiff. Sapp Dep. at 38-39.

[4] Only portions of Plaintiff's deposition have been submitted. On the last line of page 69 of Plaintiff's deposition, Plaintiff states "and I saw Teresa Sapp in the hallway, you know . . . ." Plaintiff Dep. p. 69. The next page of the deposition has not been provided to the Court and, thus, the record does not reveal the conversation between Plaintiff and Sapp. At the hearing, the attorneys represented that no further details of Plaintiff's conversation with Sapp are available.

obtaining the LPN/RN Staff Nurse position, Lewis was working at McLeod Dillon as a Lab Technician. Lewis Dep. at 7-8. She went to school continuously from 2009 to 2011 to obtain her LPN and then RN degrees. Lewis Dep. at 9-10, 24. Lewis obtained her LPN degree in October 2010 and began applying for RN positions[5] at McLeod Dillon. Lewis Dep. at 7,10, 13. Although, as a Lab Technician at McLeod Dillon, she interacted with Sapp on occasion, she never spoke with her about wanting to work as an LPN prior to her interview. Lewis Dep. p. 11. She also had no specific knowledge that it was acceptable for LPNs to apply for an RN position, but she did anyway because she knew McLeod Dillon did not hire LPNs and she would be graduating with her RN degree in May. Lewis Dep. p. 12-13. Lewis applied for the RN position in the ICU department in December of 2010. Mitchell Aff. ¶ 4.

In December 2010, Sapp lost two nurses in the ICU department. One nurse transferred to another department and another employee went out on maternity leave. Sapp Dep. at 50-51. Short two nurses, Sapp began reviewing applicants for the RN position. Sapp Dep. at 51. Lewis had applied for an RN position in the ICU, Mitchell Aff. ¶ 4, and Sapp had previously interviewed Lewis for a different position[6] and knew that she was in her final semester to get her RN degree and was on a McLeod Health scholarship. Sapp Dep. at 50-51. Sapp hired Lewis to fill the RN position as an LPN until she obtained her RN degree.

Plaintiff asserts that Lewis' position was both created and filled on December 15, 2010, indicating that the position was never posted and was created especially for Lewis. See RN Jobs Applied for by Spring Lewis. However, Beverly Mitchell, a Human Resources Assistant at McLeod

---

[5]The record reveals that Lewis began applying for RN positions in September of 2010. RN Jobs Applied for by Spring Lewis (attached as Ex. B to Pl. Response).

[6]Sapp had previously interviewed Lewis for a MST position, but it conflicted with her school schedule. Sapp Dep. 37-38.

Dillon, explains that, the position for which Lewis applied was an RN Staff Nurse position (# 20090977), which had been posted in December of 2009 and then put on hold in January of 2010. Mitchell Aff. ¶ 2 (attached as Ex. 1 to Defendant's Reply). When a position is put on hold, it is still posted online and applicants can still apply for the position. Mitchell Aff. ¶ 3. The hold on this particular position was lifted in late August of 2010. Mitchell ¶ 3. Once Sapp interviewed and decided to hire Lewis, Mitchell had to create a temporary job code that would pay Lewis as an LPN until she received her RN license in June 2011. Mitchell Aff. ¶ 6. Mitchell manually created an LPN requisition in the applicant tracking system and filled it with Lewis. Mitchell Aff. ¶ 6. The LPN job requisition (# 20110204) was created on December 15, 2010; however, this job requisition was a temporary job requisition to replace the RN Staff Nurse position (# 20090977) that Lewis would ultimately be filling once she received her RN degree. Mitchell ¶ 6; RN Jobs Applied for by Spring Lewis (showing the positions and their requisition numbers).

After discovering that Lewis[7], who she knew was also in school for her RN degree, was working as a nurse in the ICU, Pl. Dep. 80, 85-86, Plaintiff inquired with Mitchell on January 17, 2011, about whether there were any Nurse Extern[8] positions available, and Mitchell stated there were

---

[7]In her Response, Plaintiff also names other white LPNs who were allowed to work as LPN/RN Staff nurses or nurse externs while attending school, including Crystal Hodge, Teresa Walker, Lauren Pittman and Reanna Henderson. However, she fails to present any evidence about these individuals such as when they were hired or where they were working prior to being hired as LPN/RN Staff nurses. Furthermore, at the hearing, counsel for Plaintiff clarified that Lewis is the only "comparator" for the prima facie analysis in this case.

[8]In her deposition, Sapp explains that a Nurse Extern is entirely different from an LPN. Sapp. Dep. p. 12. A Nurse Extern is an assistant or an aid, while an LPN is a nurse. Id. An LPN can "give medications to the patient" and "document in the chart." Id. A Nurse Extern "cannot dispense medicine or anything." Id. The position filled by Lewis was not a Nurse Extern position, but an RN position, in which Lewis worked as an LPN until she obtained her RN license. Plaintiff's emails reveal that Plaintiff, after learning of Lewis' employment, began inquiring specifically about Nurse Extern positions. See Plaintiff's Emails. It is not clear from the record what type of position Plaintiff inquired about when she spoke to Sapp and other department managers in June and July of 2010.

none available at the time. Plaintiff's Emails (attached as Ex. C to Pl. Response). In a subsequent email, Plaintiff asked Mitchell if it would be okay if she contacted some of the Nurse Managers directly regarding a Nurse Extern position, which Mitchell agreed was fine. Id. Plaintiff then contacted Causey at McLeod Dillon via email on January 18, 2011, and explained that she was interested in a Nurse Extern position and that she was in her fourth semester of Nursing and would finish later in the summer. Id. Plaintiff also contacted Nancy Barnes, Associate Administrator for Patient Services at McLeod Dillon, on January 19, 2011, about a Nurse Extern position, who suggested that Plaintiff complete an application online. Id. Plaintiff also emailed Teresa Sapp, Director of Critical Care Services at McLeod Dillon, on January 24, 2011, inquiring about a Nurse Extern position. Id.

In her deposition, Sapp testifies that she has "hired ER nurse externs that are in their last semester in the RN program." Sapp. Dep. p. 10. Sapp explains that she usually visits nursing schools in February or March to speak with the senior class and tell them about McLeod Dillon and what openings they have. Id. The students can then go online and apply for an RN position and, if hired, will work as an Extern until they obtain their RN license in May. Id. Sapp recalls hiring a Nurse Extern in the ER "right when we were fixing to move into the ER."[9] Sapp Dep. pp. 41, 74. Mitchell avers that McLeod Dillon does not normally hire Nurse Externs but that, between 2009 and 2011, McLeod Dillon hired two Nurse Externs: April Harley, who is African American, in 2009, and Deana Flynn, who is Caucasian, in 2011, when the new Emergency Room was completed. Mitchell Aff. ¶ 7.

---

[9]Sapp was asked in her deposition if she recalled hiring any Nurse Externs in 2010, and she testifies that she hired one probably in March, right before moving into the new ER. Sapp Dep. p. 41. However, Mitchell, the HR Assistant, avers that Nurse Externs were hired only in 2009 and 2011, and that the new ER was completed in 2011. Mitchell Aff. ¶ 7.

Plaintiff also points to African-American employees of McLeod Dillon who claim to have experienced discrimination with respect to hiring, transfer or promotion. For example, Sharon McGirt, despite applying for several positions, "started as a unit secretary and left as a unit secretary" after four years of employment. McGirt Affidavit (attached as Ex. E to Plaintiff's Response). She does not elaborate on the positions for which she applied or who received the positions, other than she applied for and was denied a position in the Medical Records Department, which never had a black employee during McGirt's four years at McLeod Dillon. Id. McGirt also avers that a white employee was given preferable shifts over herself "and others." Id. Alexia McCoy, who began working at McLeod Dillon in 1997 as a Staff Nurse, avers that, after receiving her Bachelor's Degree in Nursing, she was passed over for a Hospitalist Manager position, which was given to an LPN, who was in school to receive her Associate's Degree in Nursing. McCoy Affidavit (attached as Ex. E to Plaintiff's Response). Again, while she was in school to receive her Master's Degree in Nursing Education, she was passed over for a Clinical Nurse Educator position. Id. McCoy does not identify who received the Clinical Nurse Educator position over her. However, she does aver that she informed the Human Resources Administrator that she felt there were racial inequalities within McLeod Dillon. Id. Barbara Rowell began working at McLeod Dillon as a Certified Nursing Assistant (CNA) and, after obtaining a word clerk certificate, applied for a position as a Unit Secretary. Rowell Affidavit (attached as Ex. E to Plaintiff's Response). She was told that she did not qualify for the position because she had too many absences. Id. Rowell does not identify who received the position.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging racial discrimination with respect to McLeod Dillon's failure to hire her as an LPN/Nurse Extern as early as April 20, 2010. She was issued a Notice of Right to Sue on

November 23, 2011, and filed the present action on February 21, 2012.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

Plaintiff alleges that McLeod Dillon failed to hire her because of her race in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for claims pursuant to Title VII. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004). To establish a prima facie case of discriminatory failure to hire, Plaintiff must show (1) she is a member of the protected class, (2) she applied for the position in question, (3) she was qualified for the position, and (4) she was rejected for the position in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination. Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir.2004); Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998).

Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination because she did not apply for the position in question. Plaintiff asserts that the job in question is the position obtained by Lewis in the ICU. She argues that a question of fact exists as to whether she applied or even could have applied. However, Plaintiff's arguments are not supported by the record. Plaintiff argues that she made numerous attempts to gain employment with "Defendant."  Pl.

Response p. 9. However, the only Defendant in this action is McLeod Dillon and the position in question was at McLeod Dillon. Although Plaintiff contacted several individuals at McLeod Dillon and informed them of her interest in working as a Nurse Extern until she received her RN degree, she initiated this contact <u>after</u> the position in question was already filled by Lewis. Furthermore, to the extent she argues that her informal contact with Sapp in June or July of 2010 constitutes an application, the record is void of any details regarding this conversation that would allow the court to find an issue of fact exists. Based upon the evidence in the record, no reasonable juror could conclude that Plaintiff ever submitted an official application for the job in question or that she even inquired about the job in question to anyone at McLeod Dillon.

Plaintiff also argues that she cannot be held to a standard that requires her to apply for a job that was not posted and was not created until the day it was filled. She points to records that show that an LPN/RN Staff Nurse position in the ICU was created and filled on December 15, 2010. See RN Jobs Applied for by Spring Lewis p. 2. Thus, Plaintiff argues, Lewis never applied for the position and it was created specifically for her. While Plaintiff is partially correct, the evidence reveals that Lewis did apply for an RN position in the ICU at McLeod Dillon that had been posted in December of 2009, and was hired to fill that position. However, because she was still an LPN at the time she was hired, a new position had to be created by Human Resources so that Lewis would be paid as and considered an LPN until she earned her RN degree. Contrary to Plaintiff's insinuation, there is no evidence in the record that the position at question was simply handed to Lewis without any initiation or with informal initiation on her part. The record actually shows that Lewis applied for several RN positions while she was still an LPN. See RN Jobs Applied for by Spring Lewis p. 2. Despite the undisputed evidence that the position in question was posted as an

RN position as early as December of 2009[10], Plaintiff did not apply for the position in question or any other RN positions at McLeod Dillon. While Plaintiff argues that no one told her she could apply for an RN position as an LPN,[11] Lewis also testifies that she had no specific knowledge that it was acceptable for her to apply in an RN position as an LPN and that she did so on her own initiative. Thus, Plaintiff's argument that she could not be expected to apply for a position that did not exist or that she should have been told that she could apply for an RN position is without merit.

Plaintiff also presents evidence that Sapp visited nursing schools and told RN students in their final semester that they could apply for RN positions and, if hired, would work as a Nurse Extern until they received their RN license a few months later. To the extent Plaintiff argues that Sapp also should have provided her with this information, Plaintiff presents no evidence of any nursing students who were offered Nurse Extern positions after being provided with such information, nor is there any indication that only white nursing students were given this information.

Plaintiff has failed to present sufficient evidence upon which a reasonable jury could conclude that Plaintiff applied for the position in question.[12] Additionally, for the same reasons

---

[10] As noted above, even though the position had been put on hold, it was still visible online and applicants were still able to bid for it.

[11] Although Plaintiff testifies that she spoke with department managers at McLeod Dillon, including Sapp, in June and July of 2010, around the same time she was submitting online applications, the record does not reveal the actual conversations she had with these individuals. The court would have to speculate as to what she told them and what answers she was given. Plaintiff appears to argue that Sapp visits nursing schools and tells RN students in their last semester that they can apply for RN positions and hold the spot as a Nurse Extern until they receive their RN license, and, thus, Sapp should have told her the same thing. However, Sapp testifies that she give students this information in February or March prior to their graduation in May. To the extent Plaintiff was inquiring about such a position when she spoke with the department managers, she did so in June or July, almost a full year before she would graduate.

[12] There are circumstances in which "a plaintiff who has failed to apply for a job may still carry his burden of proof if he can demonstrate that 'he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected

already discussed, Plaintiff fails to show that she was rejected for the position in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination. Plaintiff argues that she should have been told that she could apply for an RN position. However, there is no evidence in the record that anyone told Lewis to apply for the RN position. It is undisputed that she did so on her own initiative. Further, as set forth above, even though Sapp testifies that she does visit nursing classes and tells students they can apply for RN positions prior to being licensed as an RN, there is no evidence in the record that the classes she visits are comprised only of white students. Finally, although Plaintiff argues that an atmosphere of racial inequality exists at McLeod Dillon, the evidence she presents to support this contention is insufficient to create an issue of fact regarding the issue at hand, which is whether <u>Plaintiff</u> was denied the ICU position obtained by Lewis because of her race. Lewis was hired by Sapp and the evidence in the record is insufficient to give rise to an inference that Sapp held any racial animus.

Absent an application by Plaintiff for the position in question or sufficient evidence that would allow for an inference of unlawful discrimination, Plaintiff fails to establish a <u>prima facie</u> case of race discrimination, and it is unnecessary to continue with the burden-shifting framework established by <u>McDonnell Douglas</u>. Therefore, summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary

---

had he actually applied.'" <u>Pinchback v. Armistead Homes Corp.</u>, 907 F.2d 1447, 1451 (4th Cir.1990). In such a situation, the plaintiff has the burden of proving that he would have applied for the job had it not been for his knowledge of the employer's discriminatory practices. <u>International Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 368, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). However, Plaintiff does not raise this argument and there is no evidence in the record to support the same. Furthermore, in such a scenario, the plaintiff must still meet the other three elements of a <u>prima facie</u> case, <u>Brown</u>, 159 F.3d at 902, and, here, Plaintiff cannot do so because she also fails to present evidence that the position was given to Lewis under circumstances that give rise to an inference of discrimination.

Judgment (Document # 21) be granted and this case dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 26, 2013
Florence, South Carolina